**In re E. David HARRISON, Petitioner.**

**No. 85–1323.**

District of Columbia Court of Appeals.
Argued April 29, 1986.
Decided June 12, 1986.

Neal Goldfarb, Washington, D.C., for petitioner.

Samuel McClendon, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., was on brief, for respondent, the Bd. on Professional Responsibility.

Before PRYOR, Chief Judge, and TERRY and ROGERS, Associate Judges.

PRYOR, Chief Judge:

Petitioner, E. David Harrison, has applied for reinstatement as a member of the District of Columbia Bar after having been suspended for commingling and misappropriating client funds. The issue before this court is whether petitioner has established by clear and convincing evidence that he is fit to resume the practice of law. Because we conclude that he has satisfied his burden in that regard, we grant his petition for reinstatement.

I

In 1983, the Board on Professional Responsibility (Board) found that Harrison had commingled and misappropriated a client's funds in violation of DR 9–102, and recommended a year and a day suspension. This court upheld the Board's findings and adopted the Board's recommended sanction: *In re Harrison*, 461 A.2d 1034, 1035 (D.C.1983). Harrison's suspension from the Bar for a year and a day was effective October 6, 1983.

On December 10, 1984, Harrison filed a petition for reinstatement to the Bar pursuant to D.C. Bar R. XI, § 21(1) & (5).[1]  A

---

1. Rule XI, § 21(1) provides in pertinent part:

No attorney suspended for more than one year ... may resume practice until reinstated by order of this Court. ...

hearing on his petition was held on February 19, 1985. Harrison and five character witnesses testified on Harrison's behalf.[2] In addition, petitioner submitted certain documentary evidence in support of his petition.

Bar Counsel opposed Harrison's petition for reinstatement to the Bar on the grounds that certain conduct by petitioner while he was suspended demonstrated that petitioner was unfit to resume the practice of law. The alleged improprieties included: (1) Harrison's handling of a real estate transaction on behalf of a friend; (2) his utilization of an overdraft agreement on his personal checking account during the period of his suspension; (3) the fact that his name was listed in the lawyers' section of the *Yellow Pages* and in the 1984 *Legal Register;* and (4) his alleged failure to notify an organization for which he had formerly served as general counsel of his suspension. Bar Counsel did not present any witnesses at the hearing.

Following the hearing's conclusion, the Hearing Committee issued a Report and Recommendation in which it made factual findings and concluded that, based on the testimony and exhibits presented at the hearing, Harrison had met his burden of demonstrating by clear and convincing evidence that he satisfied the criteria for reinstatement to the Bar.

Thereafter, Bar Counsel filed exceptions with the Board arguing that Harrison's petition for reinstatement should be denied. In a Report and Recommendation dated September 12, 1985, the Board found that the Hearing Committee's findings of fact were supported by substantial evidence, but in contrast to the Hearing Committee, concluded that because of the four incidents cited by Bar Counsel petitioner had

not met the burden imposed on him under ·Rule XI, § 21(5). Accordingly, the Board recommended to this court that Harrison's petition for reinstatement should be denied.

## II

■ This court's recent decision in *In re Roundtree,* 503 A.2d 1215 (D.C.1985), established that although the Board's and Hearing Committee's recommendations in reinstatement cases are entitled to great weight, the ultimate determination concerning any petition for reinstatement to the District of Columbia Bar rests in this court alone. *Id.* at 1217. Thus, before this court will grant a petition for reinstatement, we must be independently satisfied that the criteria for reinstatement have been met. As we emphasized in *Roundtree,* the burden is on the petitioner to demonstrate to this court by clear and convincing evidence that he or she has met the requirements contained in D.C. Bar R. XI, § 21(5), and is fit to resume the practice of law. *Id.* at 1216.

■ In *Roundtree,* the court also set out, for the first time, a five-factor inquiry for determining whether the criteria for reinstatement have been met. The five factors which this court must examine are as follows:

(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

Rule XI, § 21(5) provides in pertinent part: Upon receipt of [a] petition for reinstatement ... [t]he hearing committee shall promptly schedule a hearing at which the petitioning attorney shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competency, and learning in law required for readmission and that his resumption of the practice of law will

not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest.

**2.** Petitioner's witnesses included a local real estate developer, a prominent local banker, a music festival producer, a retired United States Army General, and a local attorney.

*Id.* at 1217. Applying these factors to the instant case, we conclude that petitioner has satisfied the criteria for reinstatement.

First, though Harrison's single violation of DR 9–102—commingling and misappropriating his client's funds—was a serious one, there existed certain mitigating factors. As the Board recognized in making its recommendation for sanctions to this court at the time of petitioner's discipline, the circumstances surrounding the violation were less egregious than those in other cases involving commingling and misappropriation. *See In re Harrison, supra,* 461 A.2d at 1036. Specifically, the Board accepted the Hearing Committee's finding that through sloppy bookkeeping petitioner had inadvertently commingled his client's funds, as opposed to deliberately withdrawing or appropriating client funds as his own. *See id.* Moreover, his misconduct was limited to one isolated incident.

At the hearing on reinstatement, Harrison testified that he was very much aware that the conduct for which he was suspended was wrong,[3] and enumerated the specific steps he would take in the future to ensure that such misconduct would not recur. He stated that if reinstated, he would improve his system of bookkeeping by maintaining careful records of his clients' funds under the supervision of an accountant, and by opening an escrow account into which he would deposit any client funds.[4] He would also hire a secretary whose express responsibility would be to maintain accurate records relating to the escrow account. The Hearing Committee found petitioner's testimony in this regard to be "most sincere," and were persuaded that if reinstated, petitioner would be "most careful and scrupulous" in any future handling of his clients' money.

With regard to his current competence to practice law, Harrison testified that he has kept up with developments in the law by reading leading journals, bar publications, and other legal publications. In addition, he stayed in regular contact with staff members of various government agencies before which he had practiced prior to his suspension, in order to stay abreast of relevant changes and developments in the law. Indeed, Harrison's current professional skills were never questioned by Bar Counsel or any one else involved in these proceedings.

Further, a number of distinguished and credible witnesses testified concerning both petitioner's competence to practice law and his moral character. The witnesses, former clients, business associates, and long-time friends, testified about numerous favorable associations with petitioner. Without exception the witnesses stated that they held petitioner's character in high esteem and would trust petitioner to handle money on their behalf and/or represent them as their attorney. Harrison's long-time involvement in public service work prior to his suspension, and his stated intention to resume such work if reinstated, further illustrated his strong character and commitment to the community.

Notwithstanding this evidence highlighting petitioner's qualifications to be reinstated to the Bar, Bar Counsel urges us to reject Harrison's petition on the basis of four incidents which it contends manifest Harrison's unfitness to resume the practice of law. The Board in recommending that petitioner be denied reinstatement based its decision on these alleged improprieties. We are not persuaded, however, that the examples cited by Bar Counsel warrant denying petitioner's application for reinstatement. We proceed to examine each of the four incidents:

---

3. Another witness at the hearing, who had known petitioner for many years, stated that the suspension "was a terribly sobering experience" for petitioner.

4. Petitioner also testified that following the filing of the complaint which led up to his suspension, he opened an escrow account for client funds, but closed the account when he was suspended from practice.

### (1) *Real Estate Transaction*

Bar Counsel argues that petitioner's handling of a real estate closing, during the period of his suspension, on behalf of a friend was improper. According to the record, Harrison, pursuant to a power of attorney, attended a real estate closing for a longtime friend who was out of the country at the time. The undisputed evidence showed, and Bar Counsel does not contest, that Harrison acted only in an agency capacity and not as an attorney-at-law. Pursuant to his principal's explicit instructions, Harrison deposited a check representing the proceeds from the transaction into his own personal bank account. Harrison testified before the Hearing Committee that while he had no available escrow account into which he could deposit the check from the real estate closing because he was suspended from practicing law at the time, he offered to open such an account specifically for this transaction. His friend, however, told him not to open an escrow account but rather to deposit the money into Harrison's own personal account. The money remained in the account for only five days at which time Harrison mailed a check for the full amount of the sales proceeds to his friend, less Harrison's agreed upon fee. At all relevant times, Harrison had sufficient funds in his account to cover the amount received at the real estate closing.

The Hearing Committee concluded that Harrison acted in good faith and committed no impropriety with respect to this transaction, and we agree. Petitioner did not act as an attorney-at-law in this situation, and in his agency capacity he handled the funds in strict accordance with the explicit instructions of his friend. Accordingly, we do not believe this transaction reflects an inability on petitioner's part to handle money in his professional capacity.[5]

### (2) *Legal Listings*

Bar Counsel also contends that Harrison did not comply with the conditions of his suspension with respect to closing down his legal practice and avoiding any activity which might be construed as the practice of law because Harrison's name appeared in the 1984 *Legal Register* and the telephone *Yellow Pages* listing of lawyers during the period of his suspension.

Petitioner testified at the proceedings before the Hearing Committee that following his suspension he asked to have his name removed from both the *Legal Register* for 1984 and the *Yellow Pages* for that year but his instructions apparently were not followed. The Hearing Committee credited petitioner's testimony in this regard. Supporting his testimony about his efforts was evidence that Harrison had made a similar request to the publishers of the Martindale-Hubbell directory and, as a result, his name did not appear in that directory following his suspension. Bar Counsel presented no evidence contradicting Harrison's representations on this question.[6] Harrison also testified, and

---

5. Of the four incidents cited by Bar Counsel, this presents the most difficult question. On the one hand, we recognize that a disbarred or suspended attorney needs to continue to earn a living outside the practice of law. In petitioner's case, his longtime area of expertise was in the real estate field. On the other hand, while petitioner's conduct here did not constitute unauthorized practice, a suspended attorney should avoid even the appearance of unauthorized conduct. Thus, while it might have been preferable for petitioner not to have engaged in this transaction, his participation does not rise to the level that would prevent reinstatement.

6. This is not to suggest that Bar Counsel was under an obligation to present contradictory evidence, or any evidence for that matter, on this question. Indeed, as a cautionary matter we think it important to comment on the nature of the evidence petitioner presented on this issue. As stated above, the burden of proof in any reinstatement case is on the petitioner alone. In this instance, petitioner chose to rely solely on his own oral testimony concerning what steps he took to comply with the conditions of his suspension. Thus, for example, Harrison did not present copies of any letters he might have written to the telephone company, or to the publishers of the *Legal Register*, requesting that they remove his name from the pertinent sections. Clearly, documentary evidence is superior in a proceeding of this kind, and a lawyer in petitioner's position runs a

presented corroborating documentation, that upon being suspended he had printed new stationery, business cards, checks and deposit slips, stating only his name and eliminating any reference to himself as a lawyer. He also changed the sign on his office door to omit the words "law offices."

In short, the Hearing Committee found that Harrison had made sincere efforts to comply with the conditions of his suspension and did not in any way hold himself out to the public as a practicing lawyer, or deliberately place himself in a position where he was likely to come into contact with his former clients.

█ Recognizing that it is often difficult to have telephone and other directory listings changed, and giving due deference to the Hearing Committee's assessments of credibility since, they, as finders of fact, were in the best position to view the witnesses and judge their demeanor and truthfulness, we accept the Hearing Committee's findings as to these events. We are further persuaded in our conclusion by the evidence of other actions which Harrison took to close down his practice following his suspension. *Compare In re Kraus*, 295 Or. 743, 745–47, 670 P.2d 1012, 1013–14 (1983) (attorney denied reinstatement where he continued to be listed in lawyers' section of *Yellow Pages*, continued to have regular professional contact with former clients, continued to communicate with other attorneys concerning cases pending at the time of his suspension, and failed to change sign on office door); *In re Yamagiwa*, 97 Wash.2d 773, 775–77, 650 P.2d 203, 205 (1982) (en banc) (attorney's disbarment ordered where following attorney's suspension he continued to be listed in lawyers' section of *Yellow Pages*, continued to represent clients on a regular basis, and failed to notify his clients of his suspension).

### (3) *Overdraft Agreement*

At Harrison's disciplinary hearing in 1983, it was shown that Harrison's failure

to keep a careful running account of the funds in his personal checking account contributed to his problems concerning his client's funds. Claiming that petitioner is still plagued by an inability to handle money, Bar Counsel presented evidence at the reinstatement hearing which allegedly showed that Harrison's personal checking account was overdrawn during certain months of his suspension. The Hearing Committee found, however, that Harrison had an arrangement with his bank to cover most checks written on insufficient funds. Thus, the Committee concluded that any overdrafts were a reflection of the credit arrangement between Harrison and his bank, and that there was no evidence, as Bar Counsel conceded, that Harrison knowingly wrote checks on insufficient funds. The Committee found that because he had committed no wrongdoing and, especially in light of Harrison's convincing testimony that if readmitted he would significantly improve his bookkeeping practices with respect to his clients' funds, his personal banking practices during the period of his suspension did not furnish grounds for denying Harrison's petition for reinstatement.

█ We are again influenced by the Committee's conclusions regarding petitioner's future ability to handle client funds. Moreover, in the absence of evidence that Harrison knowingly issued bad checks, we cannot say that his use of an overdraft agreement on his personal checking account, in a manner worked out with his bank, is conduct warranting a denial of his petition for reinstatement.

### (4) *Notification Requirement*

Bar Counsel's final claim was that Harrison breached his duty under D.C. Bar R. XI, § 19, by not notifying the Inter-American Music Festival, an organization for

---

greater risk of not satisfying his burden of proof, where he or she chooses to rely solely on

uncorroborated oral testimony.

which Harrison had served as general counsel, of his suspension. Harrison contended that he had not served as the Festival's general counsel since December 1982, and, accordingly, was not under an obligation pursuant to D.C.Bar R. XI, § 19.

Harrison testified at the hearing that while he previously had served for a number of years as general counsel to the Festival, he had not performed any legal services for that organization since 1982. This testimony was corroborated by Harold Boxer, General Director of the Festival, who stated that Harrison had ceased doing any legal work for the organization in 1982.[7] In any event, Harrison testified that even though he was not required to, he notified Mr. Boxer that he could no longer act as general counsel for the Festival. The Hearing Committee concluded from the evidence that Harrison had not performed legal services for the Festival organization during the period of his suspension and had committed no wrongdoing.

D.C. Bar R. XI, § 19 provides, in pertinent part, as follows:

(1) A disbarred or suspended attorney shall promptly notify by registered or certified mail, return receipt requested, all clients being represented in pending matters other than litigated or administrative matters or proceedings pending in any court or agency, of his disbarment or suspension and his consequent inability to act as an attorney after the effective date of his disbarment or suspension, and shall advise said clients to seek legal advice elsewhere.

(2) A disbarred or suspended attorney shall promptly notify, by registered or certified mail, return receipt requested, each of his clients who is involved in litigated matters or administrative proceedings in this Court of pending matters in the Superior Court or any District of Columbia administrative agency, and the attorney or attorneys for each adverse party in such matter or proceeding, of his disbarment or suspension and conse-

quent inability to act as an attorney after the effective date of his disbarment or suspension. The notice to be given to the client shall advise the prompt substitution of another attorney or attorneys in his place.

■ The purpose of the notification rule, which requires that clients be informed when an attorney is suspended and consequently lacks the authority to represent or advise them in legal matters, is to protect both the public and the profession from unauthorized practice. *See, e.g., In re Yamagiwa, supra,* 97 Wash.2d at 776, 650 P.2d at 205. Under the plain language of Section 19, an attorney faced with suspension or disbarment is only required to give notice to clients "being represented in pending matters" or "who ... [are] involved in litigated matters or administrative proceedings."

■ We deem it unnecessary to the resolution of this case to expound on the precise scope of Section 19. Certainly an attorney who serves as a general counsel to a particular organization or other entity or who has an ongoing relationship with a client at the time of suspension must comply with the rule. In this instance, there was evidence in the record that petitioner had not performed any legal services for the Festival for a substantial period of time prior to his suspension, and neither considered himself nor was considered general counsel to that organization. We need not decide, however, whether under such circumstances an attorney is subject to the notification provision because the Hearing Committee credited evidence that persons at the Inter-American Music Festival were in fact notified of petitioner's suspension. We agree with the Hearing Committee's findings on this question and, therefore, conclude that Harrison did not violate Section 19.

In conclusion, viewing the totality of the evidence presented at the hearing, we are satisfied that petitioner has shown by clear

---

**7.** Boxer served as a character witness for petitioner.

and convincing evidence that he has taken the necessary steps to correct the deficiencies that contributed to his past misconduct, and that he has the requisite degree of competence and character to continue in the practice of law. *See In re Roundtree, supra,* 503 A.2d at 1219. We are not persuaded differently by the issues raised by Bar Counsel. In sum, we believe petitioner has met the requirements set out in Rule XI, § 21(5) for readmission to the Bar. Accordingly, his petition for reinstatement is

*Granted.*