**In the Matter of Jeffrey Lee GREENSPAN, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals**

**No. 90–242.**

District of Columbia Court of Appeals.

Submitted June 12, 1990.

Decided July 27, 1990.

Before ROGERS, Chief Judge, and NEWMAN and FARRELL, Associate Judges.

PER CURIAM:

Respondent was charged with engaging in conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5). Specifically, respondent was charged with failing to attend meetings and to supply information to the Superior Court Auditor-Master, and failure to respond to Bar Counsel's inquiries regarding these failures.

At the same time respondent was facing these charges, he was given a six-month suspension by the Maryland Court of Appeals for making false statements to a bank on behalf of a client. Upon the recommendation of the Board, we administered reciprocal discipline *nunc pro tunc. In re Greenspan,* No. 88–1185 (April 25, 1990).

After an evidentiary hearing, the Board found that respondent violated DR 1–102(A)(5) by engaging in conduct prejudicial to the administration of justice. Bar Counsel recommended public censure, and the Hearing Committee recommended a 180–day suspension due to the presence of aggravating circumstances, namely respondent's suspension for dishonesty in Maryland. The Board has adopted the Hearing Committee's proposal and recommends a 180–day suspension. Neither party filed briefs or exceptions with the Board or with this court.

We accept the Board's findings of fact as supported by substantial evidence, and we

attach the Board's Report and Recommendation hereto and incorporate it by reference. We also agree with the Board that, in light of the significant record of prior discipline stemming from respondent's Maryland case, public censure is an inadequate sanction. *See In re Jones (II)*, 534 A.2d 336, 337 (D.C.1987). Respondent's pattern of lying under oath, as demonstrated by this case and respondent's Maryland case, evinces a serious lack of fitness to practice law and leads us to conclude that a 180–day suspension borders on inadequacy as well. Therefore, in addition to a 180–day suspension, we require that respondent prove his fitness to practice before reinstatement. *In re Morris*, 495 A.2d 1162, 1163 (D.C.1985) (this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted.").[1]

Accordingly, it is:

ORDERED that, pursuant to D.C.Code § 11–2502 (1989), respondent, JEFFREY LEE GREENSPAN, is suspended from the practice of law in the District of Columbia for 180–days, with proof of fitness to practice law required before reinstatement. This order shall be effective thirty (30) days from the date of this opinion. Respondent's attention is directed to the provisions of District of Columbia Bar Rule XI, § 14 governing disbarred and suspended attorneys.

ROGERS, Chief Judge, concurring:

I write separately out of concern that respondent not be unaware of what will be required if he decides to seek reinstatement. While the Board on Professional Responsibility and the court will have to examine all of the circumstances at such a time, and cannot be bound by Bar Counsel's view of what is required, guidance

---

1. We express no opinion at this time concerning the steps Greenspan must take to rehabilitate himself before applying for reinstatement. However, we observe that in preparing his rehabilitation, Greenspan might do well to consult sources such as Bar Counsel, the Bar Association's Committee on Ethics, and our decisions in

from Bar Counsel to respondent about what would be minimally required for Bar Counsel to support respondent's request for reinstatement would provide guidance for respondent in any area where little if any guidance exists. *See In re Harrison*, 511 A.2d 16 (D.C.1986) and *In re Roundtree*, 503 A.2d 1215 (D.C.1985).

## BOARD ON PROFESSIONAL RESPONSIBILITY DISTRICT OF COLUMBIA COURT OF APPEALS

### Bar Docket No. 160–88
### BOARD REPORT AND RECOMMENDATION

This matter is before the Board on the Report and Recommendation of Hearing Committee No. 10, which, after an evidentiary hearing, concluded that Respondent had violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice). The specific misconduct found involved Respondent's failure to attend meetings and to supply information to the Superior Court Auditor–Master, coupled with Respondent's disregard of Bar Counsel's inquiries concerning those very failures.

Bar Counsel recommended the sanction of public censure. The Hearing Committee found significant aggravating circumstances and recommended a 180–day suspension. Neither party filed exceptions or briefs with the Board. We recommend a suspension for 180 days.

### Findings of fact

We adopt the Findings of Fact made by the Hearing Committee, which we find to be supported by substantial evidence in the record, as follows:

1. Respondent was admitted to practice before the District of Columbia Court of Appeals in 1975 (BX A).[1]

---

*In re Harrison*, 511 A.2d 16 (D.C.1986) and *In re Roundtree*, 503 A.2d 1215 (D.C.1983).

1. Bar Counsel's exhibits are designated "BX ___"; Respondent's exhibits are designated "RX ___"; references to the hearing transcript are "Tr. ___".

**1158**

2. On May 5, 1986, Respondent became counsel for Norbert T. Ungar, a defendant in a civil action pending in the Superior Court, captioned *Ungar v. Ungar,* Civil Action No. 14284-83.

3. The *Ungar* litigation was a family dispute over an apartment house property. Among other relief, the plaintiffs were seeking an accounting from Respondent's client for rents collected from the property.

4. On the same day that Respondent entered his appearance, Judge Joseph M. Hannon referred the case to the Auditor-Master "to determine the accountability of the collection of the rentals" from the property. (BX 2) (Tr. 27-28).

5. On July 29, 1987, approximately 14 months after the reference order, the Auditor-Master notified counsel in the *Ungar* case that a meeting would be held on September 30, 1987 "for the purpose of executing the Order of Reference." (BX 7) (Tr. 28-29).

6. Although this notice had been received by Respondent (Tr. 81, 113, 149), Respondent did not show up at the meeting. Opposing counsel appeared but, because of Respondent's absence, the meeting was not productive. (Tr. 29-30, 115).

7. Respondent had a conflicting court appearance on the day of the meeting. His law clerk contacted the Auditor-Master's office to attempt to obtain a postponement of the meeting. The proper procedures for obtaining a postponement from the Auditor-Master's office were not followed and, in fact, the meeting was not postponed. (Tr. 41-42, 61-62).

8. On October 1, 1987, the Auditor-Master sent a new notice to Respondent, requesting an explanation for Respondent's failure to attend the September 30 meeting (BX 8) (Tr. 30). Respondent received this notice (Tr. 30, 81, 115, 149), but did not respond.

9. On October 5, 1987, the Auditor-Master sent a further notice to Respondent, this time requiring Respondent to file an accounting on behalf of his client within one month (BX 9) (Tr. 31). Although Re-

spondent received this notice, he once again failed to respond (Tr. 31, 127).

10. A further notice (BX 10) was sent by the Auditor-Master on March 30, 1988, demanding an explanation for Respondent's failure to appear at the September 30, 1987 meeting and the failure to file the accounting (Tr. 31-32). This notice was also received by Respondent and it, too, elicited no response (Tr. 32, 150). This last unanswered notice led the Auditor-Master, on April 25, 1988, to contact the Office of Bar Counsel (BX 6) (Tr. 32).

11. On May 13, 1988, June 21, 1988, and July 19, 1988, the Office of Bar Counsel sent its standard letters of inquiry to Respondent, requesting response to the Auditor-Master's allegations of misconduct. (BX 11-13) (Tr. 19-21). These letters each warned Respondent that his failure to respond could be the basis for imposition of discipline, and each established a deadline for response. Respondent received these notices, but made no response. When an Assistant Bar Counsel personally telephoned Respondent about this matter on August 9, 1988, Respondent told her that he would file a written response by August 12, 1988 (Tr. 19-21). Respondent did not file a response on August 12, 1988 (Tr. 21).

12. On August 16, 1988, Respondent was personally served by the Office of Bar Counsel with a further letter of inquiry, which enclosed copies of Bar Counsel's three earlier letters (BX 14) (Tr. 141). Respondent testified under oath at the hearing that he did, in fact, respond to this last letter on August 23, 1988, by preparing and mailing to Bar Counsel a three page, single-spaced letter with numerous attachments (BX 11) (Tr. 142). The Hearing Committee found, as a matter of fact, that Respondent had not actually prepared and sent the letter dated August 23 to Bar Counsel as he had testified.

### Discussion and Conclusions

In his written submission to the Hearing Committee following the hearing, Respondent conceded that his failures to respond to the Auditor-Master and Bar Counsel constituted conduct prejudicial to the ad-

ministration of justice. *See Respondent's Proposed Findings of Fact*, dated 2/16/89, at p. 6. But even if the violations had not been conceded, we would have to find the charged violations were proven based on the evidence in this record. The only issue that remains for us now is the appropriate sanction for these violations.

Respondent urges that he should receive no more than an informal admonition because, with respect to his non-compliance with the requests of the Auditor–Master, Respondent had "no intent to subvert the judicial process" and a "good faith belief that the matter had been settled between the parties." (*Ibid.*) With respect to his failure to respond to Bar Counsel, Respondent offers what he labels a "sincere apology" and an acknowledgement "that he should have taken greater care to see to it that the August 23, 1988 letter (R.E. 11), reached its intended destination."

Bar Counsel recommended a sanction short of suspension because there was "no demonstrable prejudice" to the client and because the case "does not involve a *charge* of dishonesty" (emphasis added). *Bar Counsel's Proposed Findings of Fact*, dated 2/2/89, at pp. 10–11. Even though Bar Counsel recognized that Respondent showed little understanding or remorse concerning his conduct, and that Respondent at that very time had pending before our Board a reciprocal discipline case involving a six month Maryland suspension for dishonesty,[2] Bar Counsel still felt that public censure was the appropriate sanction.

The Hearing Committee recommended a 180–day suspension because of two aggravating factors it found. First, the Committee felt that the "most aggravating element" of the misconduct was its impact on the administration of justice in that, as a result of Respondent's inaction, the civil action of *Ungar v. Ungar* came to a "grinding halt." Second, the Committee felt that Respondent's prior discipline for dishonesty warranted a significant suspension. While the Hearing Committee may have over-stressed the practical impact of Respondent's failures on the actual progress of the *Ungar* litigation,[3] we believe that Respondent's prior discipline, standing alone, is a sufficient aggravating factor to warrant a suspension for 180 days in this case.

At the very time Respondent was conducting his defense in these proceedings (the hearing below was held in January, 1989), Respondent had just been disciplined for dishonesty in Maryland and he was suspended for six months. He suffered that discipline for making false statements to a bank on behalf of a client, for falsely denying that he had written a letter that bore his proven signature, and for falsely testifying before a judicial inquiry panel about the matter. Indeed, at the time he actually testified in the instant case, he was presumably in the midst of serving his six month Maryland suspension—which began on August 31, 1988.

Despite this, Respondent conducted his defense in this case in such manner that the unanimous Hearing Committee, after painstaking analysis of the testimony, pointedly observed:

> At the outset, the Hearing Committee believes it important to note that having had the opportunity to observe the testimony of Respondent and his former law clerk, Mr. John Bianconi, the Committee is constrained to reject, in substantial part, the testimony of both witnesses. The Committee found Respondent's and Bianconi's testimony incredible in most respects based on their demeanor, significant inconsistencies, and other troubling aspects of their testimony (and manner

---

2. On 7/28/89 this Board handed down its decision in that case, recommending the imposition of a six month suspension as reciprocal discipline. A copy of our report in that case, Bar Docket Number 308–88 is annexed hereto.

3. The *Ungar* litigation had already gone on for more than three years before Respondent got involved with it, and the Auditor–Master himself had not scheduled the first meeting of counsel until a date that was *16 months* after the reference by Judge Hannon. In addition, the case seems to have been effectively settled by the time that Respondent began his pattern of non-response to official requests. Certainly, there was no prejudice to the client.

of testifying). The Committee Members were left with the impression that neither witness was credible on each of the critical subject areas. [Hearing Committee Report, p. 9, ¶ 36.]

The Committee went on specifically to reject Respondent's testimony regarding the August 23, 1988 letter that he had purportedly sent to Bar Counsel, and found that, contrary to Respondent's testimony, Respondent had not, in fact, prepared and sent such letter when he said he did. The Hearing Committee noted that: "In rejecting Respondent's testimony, the Hearing Committee in general found Respondent's testimony not credible, and in this particular regard, found Respondent's testimony regarding the circumstances under which the letter was allegedly typed and mailed was strained, inconsistent in parts, and simply lacking in credibility." Hearing Committee Report, pp. 17–18, ¶ 53.

Respondent has not seen fit to file exceptions to the Hearing Committee Findings. Based on our own review of the record, the Board finds no basis to reach a conclusion different from that of the Committee as to the letter dated August 23.[4]

But for the disquieting linkage between the types of acts for which Respondent was disciplined in the Maryland case and his tactics at the hearing below—and what that pattern tells us about Respondent's apparent problem with veracity—our recommendation for sanction in this case would have been governed by the Court's opinion in "Jones I" (*In re Jones*, 521 A.2d 1119 (D.C.App.1986)). The Respondent there had failed to cooperate with the Auditor–Master and to respond to the legitimate inquiries of Bar Counsel. Both the Board and the Court felt that public censure was the appropriate sanction even though the Hearing Committee had recommended suspension for a year and a day.

We believe, however, that the prior discipline here makes more apposite the Court's opinion in "Jones II" (*In re Jones*, 534 A.2d 336 (D.C.App.1987)), where a six-month suspension was ordered for violations of DR 1–102(A)(5) that were coupled with violations of DR 6–101(A)(3) (neglect of legal matter). It was felt in that case, as we feel here, that the substantial suspension was warranted because of the "significant record of prior discipline." 534 A.2d at 530.

We agree with the Hearing Committee in the present case that, while Respondent's prior record of discipline was not as extensive as that in "Jones II," the record does involve a very serious finding of dishonesty that apparently had very little effect on Respondent's behavior in a situation that arose shortly thereafter. We are also troubled by the lack of any genuine remorse by the Respondent, notwithstanding the purported apology that was asserted before the Hearing Committee—an apology that treated the August 23, 1988 letter as if it were an authentic document.

CONCLUSION

Based on the foregoing, we agree with the Hearing Committee that the appropriate sanction in this case is a suspension for 180 days, and we so recommend to the Court.

Dated: February 28, 1990.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ C. Donnenfeld
CHARLES R. DONNENFELD,
Vice Chair

All members concur in this Report, except Mr. Freund, who did not participate.

---

**4.** The letter in question was supposedly typed and mailed by a temporary secretary employed by Respondent. Yet Respondent did not call this secretary as a witness on his behalf.