[No. 12531. En Banc. January 31, 1991.]

*In the Matter of the Disciplinary Proceeding
Against BEN L. HANKIN, an
Attorney at Law.*

*Lydia Gold,* for Bar Association.

*Thomas C. McCarthy,* for respondent lawyer.

SMITH, J.—This is a disciplinary proceeding against Ben L. Hankin, a member of the Washington State Bar Association, upon a show cause proceeding directed by this court to determine whether he should be disbarred.

Ben L. Hankin was suspended October 28, 1985, for failure to fulfill his 1984 Continuing Legal Education requirements and has remained suspended since that time.

After a series of proceedings through May 11, 1990, the Disciplinary Board of the Washington State Bar Association by an 8–to–3 vote recommended suspension of Mr. Hankin for a period of 1 year with credit for the time he has been suspended since July 6, 1988, and with probation for 2 years on stated conditions. We approve the recommendation of the Disciplinary Board.[1]

This case has had a long and tortuous journey through this court. It brings into focus certain realities in the lawyer discipline process.

*First is the matter of lawyer discipline generally.*

■ This court is the ultimate authority on lawyer discipline in this state.[2] This court will adopt the recommendation of the Disciplinary Board unless the court is clearly

---

[1]See Order on Show Cause Hearing dated November 7, 1990 (appended to this opinion).

[2]RLD 7.3(b).

persuaded by one or more of the following *"Noble"* factors[3] that the sanction recommended by the Disciplinary Board is inappropriate:

(1) The purposes of attorney discipline (sanction must protect the public and deter other attorneys from similar misconduct);

(2) The proportionality of the sanction to the misconduct (sanction must not depart significantly from sanctions imposed in similar cases);

(3) The effect of the sanction on the attorney (sanction must not be clearly excessive);

(4) The record developed by the hearing panel (sanction must be fairly supported by the record and must not be based upon considerations not supported by the record); and

(5) The extent of agreement among the members of the board (sanction supported by unanimous recommendation will not be rejected in the absence of clear reasons.)[4]

*Second is the matter of application of the American Bar Association's Standards for Imposing Lawyer Sanctions (Approved Draft, 1986).*

█ This court has previously made it clear that in determining an appropriate disciplinary sanction, we will apply the analytical framework provided by the *Standards* and require hearing officers and the Disciplinary Board in every case to indicate clearly in their findings (1) the formal complaint; (2) findings of fact; (3) conclusions indicating violations of specific provisions of the Rules of Professional Conduct; (4) the sanction suggested by the *ABA Standards;* (5) weighing of any aggravating or mitigating factors, based upon the *ABA Standards* considered in determining what

---

[3]*See In re Noble,* 100 Wn.2d 88, 95–96, 667 P.2d 608 (1983).

[4]*E.g., In re Johnson,* 114 Wn.2d 737, 752, 790 P.2d 1227 (1990) (citing *In re Noble,* 100 Wn.2d 88, 95–96, 667 P.2d 608 (1983)).

sanction to recommend; and (6) the sanction recommended by the hearing officer and the Disciplinary Board.[5]

 Using the framework provided by the *Standards,* these questions are considered:[6]

1. What ethical duty did the lawyer violate?

2. What was the lawyer's mental state?

3. What was the extent of the actual or potential injury caused by the lawyer's misconduct?

4. Are there any aggravating or mitigating circumstances?

After the first three questions have been answered, the *Standards* are then examined to determine the presumptive disciplinary sanction. Aggravating and mitigating circumstances are then considered to increase or decrease the presumptive sanction when determining the final sanction to be applied.[7]

*Third is the role of the Lawyers' Assistance Program in helping lawyers overcome problems contributing to the behavior resulting in the discipline.*

The Lawyers' Assistance Program is a confidential state bar resource which was established in August 1987 to help lawyers explore, clarify and resolve their personal problems, including alcohol problems. The Lawyers' Assistance Program provides short–term counseling, assesses problems, and makes referrals to appropriate professionals, treatment facilities, and peer counselors.[8] This court is in agreement with the purposes of the Lawyers' Assistance Program and will acknowledge its appropriate intervention on a case–by–case basis.

---

[5] *In re Johnson,* 114 Wn.2d 737, 745, 790 P.2d 1227 (1990).

[6] *E.g., In re Simmons,* 110 Wn.2d 925, 931, 757 P.2d 519 (1988); *In re Johnson,* 114 Wn.2d 737, 790 P.2d 1227 (1990).

[7] *See In re Johnson,* 114 Wn.2d 737, 790 P.2d 1227 (1990).

[8] *See, e.g., In re McGrath,* 112 Wn.2d 481, 485, 772 P.2d 502 (1989).

298

*Fourth is the broad question of the purpose and nature of disciplinary sanctions for lawyers.*

The *ABA Standards* provide:

**Purpose of Lawyer Discipline Proceedings.**
The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.[9]

This court stated in 1983 that:

Because we are committed to the proposition that discipline is not imposed as punishment for the misconduct, then our primary concern is with protecting the public and deterring other lawyers from similar misconduct. The severity of the sanction should be calculated to achieve these ends.[10]

Upon a finding of misconduct, a lawyer is subject to sanctions of disbarment, suspension, reprimand, censure, admonition, and probation which may include limitation upon practice, appointment of a receiver, retaking of bar examination substantive or professional responsibility test, attendance at continuing legal education courses, and any other reasonable requirement of the State's highest court or of the Disciplinary Board, as well as restitution and assessment of costs and expenses.[11]

A primary purpose of lawyer discipline proceedings is protection of the public. But that protection may be achieved by rehabilitation of the lawyer, as well as by sanctions against the lawyer. The ultimate sanction is disbarment which, by its very nature, is punishment because it terminates the offending person's status as a lawyer. The appropriate sanction must be determined on a case–by–case basis. Whether disbarment should be imposed where the presumptive sanction is disbarment in any event depends

---

[9]*ABA Standards for Imposing Lawyer Sanctions,* Std. 1.1 (Approved Draft, 1986).

[10]*In re Noble,* 100 Wn.2d 88, 95, 667 P.2d 608 (1983).

[11]*See generally* RLD Title 5. Compare *ABA Standards* 2.1–2.8.

upon the conclusion reached after weighing appropriate aggravating factors and mitigating factors.

The Disciplinary Board Order re Show Cause, signed July 11, 1990, by Richard J. Schroeder, chairperson of the Disciplinary Board, provides the basis for the recommendation of the majority of the Board which we approve. We do not lightly dismiss the dissenting opinion by board member C.C. Bridgewater (concurred in by members Ms. Yvonne Banks and Dr. Charles W. Guildner) since it provides the court a balancing point of view which we must seriously weigh in reaching our conclusion.

Respondent Ben L. Hankin was admitted to the Washington bar on June 30, 1982. The first adverse action against him occurred on October 21, 1985, when this court entered an order suspending him for failure to comply with the 1984 Continuing Legal Education (CLE) requirements, effective October 28, 1985. His suspension has continued since that date.

Between October 28, 1985, and August 1986, Respondent Hankin practiced law in this state with knowledge of his suspended status. He advised and represented clients, accepted legal fees, and made court appearances in at least six courts during that period. He "knew since at least April 1986 and possibly before that he had been suspended from the practice of law."

In January 1986, Respondent Hankin prepared a petition for dissolution of marriage on behalf of Ms. Shelly M. Brown. The petition was served on her spouse on January 31, 1986. Ms. Brown recalled entering into a property settlement agreement and believed that Mr. Hankin had the agreement in his possession. He denied that he prepared or possessed such a document. He did not file the dissolution petition with the King County Superior Court. After several months elapsed, however, Ms. Brown "got the impression from Mr. Hankin" that her dissolution was final. She then remarried. She first learned that her dissolution was not final when she attempted to enforce child support obligations against her first husband. Mr. Hankin contends,

however, that there is "no evidence that anyone has suffered any damage" from his activities.

Respondent Hankin did not respond to bar counsel's written request for answer to a complaint filed by Ms. Deborah K. Sharick, who retained him in March 1986 for dissolution of her marriage. In June 1986, while undisputedly aware that he was suspended, Mr. Hankin requested from Ms. Sharick the balance of a $220 fee for his legal services. Ms. Sharick later had difficulty contacting him because his telephone had been disconnected. She lost contact with him altogether. Respondent Hankin failed to claim a subsequent certified letter sent him by bar counsel requesting an answer to the Sharick complaint. The letter was returned unopened and unclaimed. Respondent was operating his law practice out of the Buckaroo Tavern during this time. Approximately two weeks before his disciplinary hearing held November 16, 1987, Respondent Hankin made restitution of the fees collected from Ms. Deborah K. Sharick in 1986.

The hearing officer concluded that Mr. Hankin's conduct violated RLD 1.1(i) (violation of Rules of Professional Conduct); RLD 1.1(l) (practicing law while suspended); RPC 1.15(a)(1) (representing a client in violation of the Rules of Professional Conduct or other law); RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); RPC 8.4(d) (conduct prejudicial to administration of justice); RLD 1.1(j) (failure to respond to bar request for information); and RLD 1.1(p) (unfitness to practice law).

Noting that "during the two years that Mr. Hankin has already been suspended from the practice of law . . . he has done little or nothing about completing the CLE requirements and seeking reinstatement to practice," the hearing officer recommended suspension for 2 years, to begin after termination of the CLE suspension, followed by 2 years of supervised probation.

By order dated April 4, 1988, the Disciplinary Board unanimously modified the recommendation of the hearing officer from suspension to disbarment. The order stated:

The Board was of the opinion that the record showed that respondent Hankin was a person who had no motivation or integrity to be an ethical lawyer, that his failure to appear before the Board to explain his conduct demonstrates his lack of interest in practicing law, and that the severity of his conduct in ignoring the suspension order and failing to respond to inquiries from the Bar Association warranted the most severe disciplinary sanction available.

On April 29, 1988, Respondent Hankin appealed to this court. He assigned error to the hearing officer's failure to order a supplemental hearing to inquire into respondent's capacity to conduct a proper defense, claiming RLD 10.2(b) requires an automatic capacity hearing. He further assigned error to the Disciplinary Board's consideration of his failure to appear before it, citing RLD 6.7(a).

On July 6, 1988, this court suspended Ben L. Hankin pursuant to RLD 3.2(b).

Respondent Hankin retained counsel in this matter in July 1988. He began accumulating CLE credits in September 1988.

A hearing was scheduled before this court for January 31, 1989. However, on January 5, 1989, Respondent Hankin filed a Motion for Order Directing That Additional Evidence Be Taken, alleging that during the relevant period he was "seriously impaired by alcohol . . . abuse." By order dated January 13, 1989, this court granted the motion and remanded the matter to the Board "to conduct further proceedings" because

additional findings are warranted with regard to Respondent Attorney's impairment, current status in relation thereto, the effect, if any, the impairment has had upon his alleged violations which led to this proceeding, and his compliance with Continuing Legal Education requirements.

Although the Board remanded the matter to the hearing officer and bar counsel obtained an order permitting depositions to be taken, no depositions were taken and *no hearing was held*. The Board next asked this court to approve a Stipulation to Suspension and Probation (Stipulation) dated October 20, 1989, which stated that "[t]he available

evidence indicates that Mr. Hankin is an alcoholic." The Stipulation further stated:

> Mr. Hankin, his counsel, and state bar counsel stipulate that the available information leads to the conclusion that Mr. Hankin's judgment was impaired due to abuse of alcohol during the time of the incidents about [sic] which he was found to have violated the RPCs and the RLDs.

The Stipulation conceded that "Hearing Officer Roberts' Conclusions of Law accurately reflect Mr. Hankin's misconduct," and incorporated them by reference. It provided for suspension of 1 year for practicing law while suspended, with credit for the time he has been suspended (since July 6, 1988) pending the outcome of these proceedings.

Under the stipulation, Mr. Hankin would be placed on probation and supervision for 2 years. He would be required to abstain from alcohol, attend Alcoholics Anonymous meetings, continue participation in the Lawyers' Assistance Program (LAP) and submit to random urinalyses. The stipulation further provided for possible extension of probation for an additional 2 years.

The Disciplinary Board unanimously approved the Stipulation. The Board had previously, on April 4, 1988, rejected the hearing officer's recommendation of *suspension* and instead recommended *disbarment.* In reversing its position on Mr. Hankin's disciplinary recommendation, the Board apparently considered additional evidence consisting of the Affidavit of Barbara Harper, dated December 14, 1988;[12] a memorandum from Ms. Harper to bar counsel dated June 14, 1989; two letters from practicing attorneys (peer counselors) attesting to Mr. Hankin's recovery from alcoholism and his fitness to practice law; a letter from Mr. Hankin to his attorney dated March 19, 1989; and two statements obtained by Mr. Hankin from patrons of the Buckaroo Tavern (where Mr. Hankin formerly conducted

---

[12]This affidavit accompanied Hankin's motion in January 1989, so it does not constitute evidence taken pursuant to this court's order granting that motion. However, it is possible that it was not considered by the Board or the hearing officer prior to the October 20, 1989, Stipulation.

his law practice) attesting to his consumption of alcohol during the relevant time period.

The affidavit from Ms. Barbara Harper, assistant director of the Lawyers' Assistance Program, a psychologist, states:

> During the time that Ben [L. Hankin] failed to meet the CLE credit requirements and practiced law with a suspended license, he was also seriously impaired by his use of substances. His DSM IIIR diagnosis was Alcohol Dependence as indicated by the following essential features:
> - ☐ pathological alcohol use
> - ☐ substance often taken in larger amounts or over a longer period than person intended
> - ☐ impairment in social functioning
> - ☐ a great deal of time spent in activities necessary to obtain substances
> - ☐ *impairment in occupational functioning*
> - ☐ important social, occupational, or recreational activities given up or reduced because of substance use[13]

In her memorandum dated June 14, 1989, Ms. Harper wrote of Mr. Hankin:

> Ben shows vast improvement in the areas of social and occupational functioning. He continues to abstain from substances and is more socially active and is gainfully employed in a responsible job. He continues to show progress and the prognosis for Ben Hankin's continued recovery is excellent.

In a letter dated March 18, 1989 addressed to his attorney, Mr. Hankin stated "I have no evidence from a physician as to any impairment caused by my excessive use of alcohol . . .." However, he states in the same letter:

> I have been and am still an alcoholic, although I am now recovering. During the period in question, I can say without hesitation, that my ability to practice law was impaired by my use of alcohol.

On January 11, 1990, this court in administrative conference considered the Stipulation and ordered that:

> The Disciplinary Board of the Washington State Bar Association . . . hold a hearing to show cause why Ben L. Hankin should not be disbarred.

The Board remanded the case to hearing officer Ronald A. Roberts for rehearing. Respondent Hankin, Ms. Barbara

---

[13](Italics ours.)

Harper of the LAP, and two attorneys (peer counselors) testified at that hearing on February 20, 1990. During subsequent oral argument before the Board on March 9, 1990, Respondent Hankin's attorney asked to reopen the evidentiary hearing to introduce more evidence on the timing of Mr. Hankin's impairment.

The matter was again remanded for rehearing. The hearing officer on May 4, 1990, heard testimony from three women who were drinking companions of Mr. Hankin at the Buckaroo Tavern and additional testimony from Mr. Hankin and his peer counselors. The women testified that they knew Mr. Hankin during the period of his infractions because of their association with him at the Buckaroo Tavern. Each testified that she daily drank with him at the tavern and each testified that she no longer consumes alcohol. Each further testified that Mr. Hankin was impaired by his use of alcohol during the relevant period.

On May 11, 1990, the Board again heard oral argument in this case. A majority of the Board on July 11, 1990, by an 8–to–3 vote then recommended that this court approve a sanction for Mr. Hankin of suspension for 1 year (with credit for time he has already been suspended) followed by probation for 2 to 4 years. The three dissenting board members recommended disbarment.

After consideration in administrative conference on September 6, 1990, this court ordered a hearing before the court for Mr. Hankin to show cause why he should not be disbarred.

The questions presented by this case are whether Ben L. Hankin's alcoholism (a) is the cause of his misconduct and (b) sufficiently mitigates his offense of practicing law while suspended, thus justifying suspension instead of the ultimate sanction of disbarment.

While this case was running its protracted course, we published our decision in *In re Johnson*.[14] That case considered whether an attorney's alcoholism would mitigate

---

[14]114 Wn.2d 737, 790 P.2d 1227 (1990).

the presumptive disciplinary sanction of disbarment for invasion of client trust funds. This court unanimously concluded that alcoholism was not sufficient "extraordinary" mitigation to justify suspension where the usual sanction was disbarment. Although an 11–to–1 majority of the Disciplinary Board recommended suspension as an appropriate penalty, we nevertheless disbarred the attorney in that case.

*Johnson* also restated this court's requirement that the Bar Association conform its disciplinary recommendations to the analytical format announced in the American Bar Association's *ABA Standards for Imposing Lawyer Sanctions* (Approved Draft, 1986).[15]

In determining the presumptive disciplinary sanction for Mr. Hankin in this case, we must answer the first three questions under the framework provided by the *Standards*: (1) what ethical duty did the lawyer violate? (2) what was the lawyer's mental state? and (3) what was the extent of the actual or potential injury caused by the lawyer's misconduct? We then consider aggravating and mitigating circumstances to determine the final sanction.

Respondent Ben L. Hankin violated ethical duties to his clients, to the legal system and to the profession when he practiced law while suspended. The majority of the Board and the dissent agree that he acted "knowingly." The majority recognized that "[t]here was injury or potential injury to clients, the legal system and the legal profession." The dissent characterized the injury as "serious."

The majority listed five "ABA Suggested Sanctions," each of which indicates suspension as the appropriate sanction for Mr. Hankin's misconduct. These include *Standards* 4.12 (dealing improperly with client property); 4.42 (failing to perform services or engaging in a pattern of neglect); 4.62 (deceiving a client); 6.22 (violating a court order or rule); and 7.2 (violating a duty owed to the profession).

---

[15]*In re Johnson,* 114 Wn.2d 737, 745, 790 P.2d 1227 (1990).

However, the majority did not refer to *Standard* 8.1 (practicing law while suspended) which could have been applied in this case.

■ *Standard* 4.12 recommends *suspension* of an attorney who "knows or should know that he is dealing improperly with client property . . .." *Standard* 4.11 recommends *disbarment* of an attorney who "knowingly converts client property . . .." The commentaries to these *Standards* suggest that the client "property" they address is client funds, and further suggest that disbarment is appropriate for conversion of funds, while suspension is appropriate for commingling funds.[16] The only funds at issue in Mr. Hankin's case are fees he demanded and collected for his legal services while he was suspended from the practice of law. This does not constitute "conversion" of client funds, nor does it constitute commingling of funds.

*Standard* 4.42(a) recommends *suspension* of an attorney who "knowingly fails to perform services for a client and causes *injury or potential injury to a client* . . .."[17] Standard 4.41(b) recommends *disbarment* of an attorney who "knowingly fails to perform services for a client and causes *serious or potentially serious injury to a client* . . .."[18] Determination of which of the two sanctions recommended by the *Standards* should be applied is thus dependent upon the extent of injury or potential injury to the client.

For purposes of this case, we will accept the conclusion of the majority of the Board that Mr. Hankin did not cause serious injury to any of his clients, although one of his clients, Ms. Shelly M. Brown, remarried before final dissolution of her previous marriage because she "got the impression from [attorney Hankin] that her dissolution was final." She learned that her dissolution was not final only

---

[16]*See ABA Standards for Imposing Lawyer Sanctions* 26–27 (Approved Draft, 1986).

[17](Italics ours.)

[18](Italics ours.)

after she had remarried and attempted to enforce child support obligations against her former husband. Accepting the majority's characterization of this client's experience as something less than serious injury or potential serious injury leads to suspension as the recommended sanction under *Standard* 4.42(a).

*Standard* 4.62 recommends suspension of an attorney who "knowingly deceives a client . . .."

The *ABA Standards* specifically address the practice of law while suspended in *Standard* 8.1. The majority of the Board did not discuss that standard under which the recommended sanction is *disbarment.*

The *Standards* state:

Severe sanctions should be imposed on lawyers who violate the terms of prior disciplinary orders. While such lawyers may also demonstrate a pattern of misconduct that will serve as an aggravating factor (see Standard 9.22), these violations are so serious as to warrant special discussion.

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving prior discipline.

8.1 Disbarment is generally appropriate when a lawyer:
 (a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession . . .[19]

The *Standards'* commentary to Std. 8.1 states:

Disbarment is warranted when a lawyer who has previously been disciplined intentionally or knowingly violates the terms of that order and, as a result, causes injury or potential injury to a client, the public, the legal system, or the profession. *The most common case is one where a lawyer has been suspended but, nevertheless, practices law. The courts are generally in agreement in imposing disbarment in such cases.* As the court explained in *Matter of McInerney,* 389 Mass. 528, 451 N.E.2d 401, 405 (1983), when the record establishes a lawyer's willingness to violate the terms of his suspension order, disbarment is appropriate "as a prophylactic measure to prevent further misconduct by the offending individual." See also: *In re Reiser,* M.R. 2269 (Ill. 1980), where a lawyer was disbarred when he continued to practice law in violation of an order of suspension

[19]*ABA Standards for Imposing Lawyer Sanctions* 47 (Approved Draft, 1986).

and caused *serious injury* to a client by neglecting her legal matter.[20]

The American Bar Association's *Standards* list several mitigating and aggravating factors to be considered in determining disciplinary sanctions. The majority listed these mitigating factors: (a) absence of a prior disciplinary record; (b) personal or emotional problems; (c) timely good faith effort to make restitution or to rectify consequences of misconduct; (d) full and free disclosure to Disciplinary Board or cooperative attitude toward proceedings; (e) inexperience in the practice of law; (f) character or reputation; (g) physical or mental disability or impairment;[21] (h) delay in disciplinary proceedings; (i) interim rehabilitation; and (j) remorse. The majority listed these aggravating factors: (a) a pattern of misconduct; and (b) multiple offenses.[22]

In the final analysis, Ben L. Hankin's conduct must be weighed against the applicable *ABA Standards* and this court's prior decisions in *In re Yamagiwa*[23] and *In re Johnson*.[24] On the surface, *Yamagiwa* and *Johnson* would seem to suggest disbarment as the appropriate sanction against Mr. Hankin. However, those cases can be distinguished.

In *Yamagiwa*, the lawyer, who was initially suspended for failure to comply with CLE requirements, never certified

---

[20](Italics ours.) *ABA Standards for Imposing Lawyer Sanctions* 47 (Approved Draft, 1986).

[21]Alcohol impairment is not normally an "extraordinary mitigating factor" which excuses an attorney's misconduct. It is a mitigating factor, but will only be considered as such in certain circumstances. *In re Johnson,* 114 Wn.2d 737, 749, 790 P.2d 1227 (1990).

[22]The dissent stated concerning aggravating and mitigating factors that:
"There were numerous aggravating factors under 9.2 of the ABA Standards: (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceedings. Under mitigating factors we find the following: (a) absence of a prior record; (h) a physical or mental disability or impairment; (j) interim rehabilitation."

[23]97 Wn.2d 773, 650 P.2d 203 (1982).

[24]114 Wn.2d 737, 790 P.2d 1227 (1990).

his compliance with those requirements. He did not cooperate with the Bar Association's disciplinary investigation. He did not oppose the Board's recommendation of disbarment nor did he appear before this court to present oral argument in his own behalf. He did not avail himself of any program to assist him in overcoming his purported emotional and physical problems.

In *Johnson,* the lawyer, who suffered from alcoholism during the period when he committed his offenses, converted more than $21,000 of client trust funds in a series of twenty–one transactions over nine months. He had substantial experience in the practice of law and actively concealed his transgressions from his clients and interested third parties. He did enroll in a hospital–based inpatient alcohol treatment program and did participate in the Lawyers' Assistance Program, but his own physician testified that his condition of alcoholism did not affect his ability to distinguish right from wrong. The lawyer also admitted in testimony that he knew the funds he used were not his and that he understood at the time he converted the funds that he was violating trust account provisions of the Rules of Professional Conduct, but stated that his judgment was impaired by alcoholism and depression at the time.

The aggravating and mitigating factors in the case before us create a delicate balance, but we are willing in this case to weight the balance in favor of the findings of the majority of the Board.

The effect of our decision in this case is that Respondent Hankin, who has now accumulated CLE credits to overcome his 1984 delinquency, will be eligible for immediate reinstatement to practice, subject to 2 to 4 years of probation and supervision. We recognize that he will have experienced little more penalty than he would have suffered for the underlying CLE suspension alone, despite committing the serious additional offense of practicing law while suspended. However, the disciplinary proceedings themselves, along with their attendant expenses, might well constitute a substantial sanction.

Although the result of this decision is only a suspension for 1 year, Respondent Hankin has been disqualified from practicing law for more than 2 years for this offense since July 6, 1988. He has not been qualified to practice law for more than 5 years since his initial suspension, October 28, 1985. All the conditions of probation which we approve are carefully structured to serve the paramount purpose of protecting the public. Mr. Hankin's rehabilitation is well under way. Reports of his progress from the Lawyers' Assistance Program suggest the conclusion that no further purpose would be served in this case by imposing the presumptive sanction of disbarment.

The recommendation of the Washington State Bar Association Disciplinary Board will be approved by this court unless one or more of the *Noble* factors "'clearly persuades [this court] that the sanction recommended by the Board is inappropriate.'"[25] In this case, we are not clearly persuaded to vary from the Board's recommendation.

We uphold the decision of the Disciplinary Board of the Washington State Bar Association and determine that Ben L. Hankin shall be suspended from the practice of law for 1 year, with credit for time suspended since October 28, 1985, and subject to probation and conditions specified in the order of the Board dated July 11, 1990, and recited in the order of this court dated November 7, 1990.

DORE, C.J., UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, and GUY, JJ., and CALLOW, J. Pro Tem., concur.

---

[25]*In re Johnson*, 114 Wn.2d 737, 752, 790 P.2d 1227 (1990) (quoting *In re Noble*, 100 Wn.2d 88, 95–96, 667 P.2d 608 (1983)).

APPENDIX

# THE SUPREME COURT OF WASHINGTON

In re: )
 ) Bar No. 12531
Ben Lawrence Hankin, )
 ) ORDER ON SHOW CAUSE HEARING
Attorney at Law. )
 )
_____)

This matter came before the Court from the Washington State Bar Association Disciplinary Board filing with the Court an Order and Recommendation dated July 11, 1990, recommending suspension for one year, with a conditioned probation period. The vote on the recommendation was 8-3, with a dissenting opinion recommending disbarment. Two Board Members concurred with the dissent.

The Supreme Court heard oral argument from Respondent Attorney's counsel, Thomas C. McCarthy and State Bar Counsel, Maria Regimbal at a Show Cause Hearing on November 1, 1990.

ORDER:

The Order and Recommendation of the Disciplinary Board dated July 11, 1990 is approved. Ben Lawrence Hankin is suspended from the practice of law for a period of one year with time already suspended applied toward the suspension. Reinstatement will be entered after a separate order of reinstatement for compliance with CLE requirements. Mr. Hankin will be placed on probation for a period of two years, commencing with the date he is

205/664

reinstated to active status with the Association. The
probationary period shall be on the following conditions:

a. Mr. Hankin shall refrain from the use of alcohol, the use
of any drug or narcotic except at the direction of his doctors.

b. A suitable lawyer shall be appointed to supervise Mr.
Hankin's probation, which will include a regular review of his
caseload, at such time periods as directed by State Bar Counsel.
For at least the first six months of probation, the reviews of
Mr. Hankin's caseload shall take place no less than once a month.
He shall have the obligation of finding a suitable supervising
lawyer who meets with the approval of State Bar Counsel.

c. Mr. Hankin shall respond timely to any future requests
for information from the Association, in compliance with RLD 2.8.

d. He shall continue meeting with LAP staff and/or his peer
counselors, at the direction of LAP staff and continue Alcoholics
Anonymous meetings as directed by LAP staff.

e. Mr. Hankin shall direct LAP staff to conduct random
urinalyses upon him, to be administered at least once every six
months. He shall agree that LAP staff will report the results of
the urinalyses to bar counsel should the result indicate the
presence of alcohol or non-prescribed drugs or narcotics.

f. Mr. Hankin shall agree to waive any doctor-patient or counselor-patient privilege with respect to any treatment or counseling he receives and agree to the release of all medical, counseling and treatment records and evaluation to bar counsel. Mr. Hankin shall obtain quarterly reports from LAP as to his treatment and prognosis.

g. Mr. Hankin shall comply with requirements of RPC 1.14 regarding the handling of client funds and read and comply fully with the WSBA Trust Account Guidelines, or its successor.

h. At the conclusion of the two year probationary period, Mr. Hankin shall be evaluated by a doctor or counselor, approved by Bar Counsel, who shall submit a report as to Mr. Hankin's treatment and or counseling for his alcoholism. If the doctor or counselor are of the opinion that Mr. Hankin's probation should be continued, said probationary period shall be continued for an additional two years.

i. Mr. Hankin shall bear any costs and expenses which may be incurred during such probationary period, including expenses of counseling, examination, random urinalyses, evaluation or supervision, expenses of medical or counseling reports.

j. Mr. Hankin shall bear any other costs which may be incurred pursuant to fulfilling these probation requirements,

including costs of supervision and expenses of examination of
trust accounts. In addition, he shall pay all costs and expenses
assessed against him and in favor of the Association as a result
of these disciplinary hearings.

DATED at Olympia, Washington this ___7th___ day of November,
1990.

_____

ACTING CHIEF JUSTICE