**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILED
SUPREME COURT
STATE OF WASHINGTON
2/11/2022
BY ERIN L. LENNON
CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GEOFFREY COLBURN CROSS, Lawyer<br>(Bar No. 3089),<br><br>Appellant. | No. 201,993-5<br><br>ORDER<br>AMENDING<br>OPINION |

It is hereby ordered that the majority opinion of Gordon McCloud, J., filed December 23, 2021, in the above entitled case is amended as indicated below.

On page 2, line 4 of the slip opinion, after "barred such disclosure." delete "The Office of Disciplinary Counsel's hearing officer determined that the conduct was "negligent," and the hearing officer therefore imposed a reprimand." and insert "The hearing officer determined that the conduct was "negligent," and the hearing officer therefore imposed a reprimand."

DATED this 11th day of February, 2022.

_____
González, C.J.
Chief Justice

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Geoffrey Cross, Lawyer (Bar No. 3089)*, No. 201,993-5 (order amending opinion)

APPROVED:

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Madsen, J.

_____
Yu, J.

_____
Owens, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 23, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 23, 2021

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| In re: | NO. 201,993-5 |
| GEOFFREY COLBURN CROSS, Lawyer (Bar No. 3089), | EN BANC |
| Appellant. | Filed: December 23, 2021 |

GORDON McCLOUD, J.—Attorney Geoffrey Colburn Cross revealed information relating to his representation of former client, Drew Vickers, in a criminal matter. He revealed that information to the attorney representing a party adverse to Vickers in a separate, related, civil matter. The Disciplinary Board of the Washington State Bar Association (Board) found that Cross's conduct violated two Rules of Professional Conduct (RPC) barring such disclosures absent informed consent.[1]

---

[1] These two rules bar such disclosures absent informed consent, or other circumstances not present here: RPC 1.9(c)(2) states, "A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter . . . reveal information relating to the representation except as these Rules would permit or require with respect to a client." RPC 1.6(a) states, "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b)."

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

The main question for the court on this appeal is whether Cross's purposeful disclosure of this information to the adverse party should be considered "negligent," rather than "knowing," because Cross did not realize that the RPCs barred such disclosure. The Office of Disciplinary Counsel's hearing officer determined that the conduct was "negligent," and the hearing officer therefore imposed a reprimand. The Board disagreed: the Board unanimously ruled that Cross's disclosure was "knowing," and it therefore unanimously imposed a nine month suspension.

We uphold the Board's decision in full. We adhere to our prior decisions holding that a lawyer's conscious choice to disclose client information that the RPCs protect from disclosure constitutes "knowing," rather than "negligent," conduct—even if the lawyer does not know that the RPCs protect that information.

FACTUAL AND PROCEDURAL HISTORY

I.     Cross represented Vickers in 2014

On April 12, 2013, Vickers was driving passenger Mary Valenzuela on a Yamaha all-terrain vehicle (ATV). The ATV overturned, and both Vickers and Valenzuela were injured. Ass'n's Designated Exs. (Exs.) at 135; Decision Papers (DP) at 2. There was some evidence that Vickers had been drinking before he took the wheel. Exs. at 135, 196-97. But in the course of the criminal case that followed,

Valenzuela provided a declaration stating that the accident was "in no way [Vickers]'s fault," and that "something happened to the quad that caused the accident." *Id*. at 137-38. There was some support for her assertion: Yamaha had recalled the ATV and there is evidence that the cause of the accident may have been a mechanical failure. *Id*. at 141, 197, 199.

After the accident, Vickers consulted attorney Michael Carroll about two matters: filing a civil lawsuit against Yamaha concerning the cause of the accident and defending him against anticipated criminal charges due to the accident. DP at 2. Carroll referred Vickers to Cross. *Id*.; Verbatim Report of Proceedings (VRP) at 17. Cross had known Carroll for about 40 years, and they worked closely together for many years. VRP at 12. Carroll worked as a contractor for Cross and would earn "commissions" for the cases that he settled on Cross's behalf. *Id*. at 13. Cross and Carroll shared an office space at the time that Carroll referred Vickers to Cross. VRP at 12-13; DP at 2.

On January 6, 2014, the State charged Vickers with vehicular assault and criminal trespass in the second degree in Pierce County Superior Court as a result of the ATV accident. DP at 2; Exs. at 133. Cross represented Vickers throughout those criminal proceedings. DP at 2. Vickers pleaded guilty about two months later to the reduced charges of reckless driving and criminal trespass in the second

3

degree. *Id*. at 3. The State reduced the vehicular assault charge to reckless driving in part because it was "highly likely that the collision resulted from catastrophic failure of a steering component" of the ATV. Exs. at 141 (Prosecutor's Statement Regarding Am. Information).

The last contact between Cross and Vickers occurred after the restitution hearing, in May 2014. DP at 3; VRP at 20-21. At that time, Cross and Vickers discussed a potential products liability case against Yamaha. VRP at 19-20. Cross advised Vickers that Vickers did not have a strong case and that Vickers should not pursue this claim with Cross as counsel. *Id*. Vickers and Cross were the only parties present during this discussion—Carroll was not there. *Id*. at 19.

II.     *Valenzuela v. Vickers* and Cross's disclosures

About two years later, on July 8, 2016, Valenzuela (who had previously authored the declaration asserting that Vickers was not at fault) sued Vickers for her injuries from the ATV accident. DP at 3; *Valenzuela v. Vickers,* No. 16-2-09320-1 (Pierce County Super. Ct., Wash.); Exs. at 154-55. The complaint was filed by Carroll (who had previously referred Vickers to Cross).  That complaint alleged that Vickers caused the accident by "driving too fast" and "failing to safely control his vehicle." Exs. at 154-55.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

After Vickers's answer was filed, Vickers changed counsel to Kathleen Thompson. *Id.* at 159. Thompson promptly filed a motion to amend the answer to assert the affirmative defense that the accident was the result of the third party fault of Yamaha. DP at 3; Exs. at 160-74.

Cross learned of *Valenzuela* from discussions with both Thompson and Carroll. VRP at 21; DP at 3. Based on these discussions, Cross has admitted to knowing that (1) Carroll represented Valenzuela, the party adverse to Vickers in *Valenzuela v. Vickers*, (2) Thompson represented Vickers in *Valenzuela v. Vickers,* (3) Thompson wanted to amend Vickers's answer to assert a defense related to the manufacturing defect in the ATV, and (4) Carroll was trying to prevent Thompson from amending Vickers's answer to assert an affirmative defense. DP at 3-4; VRP at 21-24. Cross also believed that Thompson was trying to disqualify Carroll from representing Valenzuela. DP at 4; VRP at 23. (Thompson never filed such a motion. DP at 4.)

At the time that Cross knew this information, including the information about who represented whom, Carroll asked Cross to give Carroll some information about Cross's former client, Vickers. Despite the fact that Cross knew that Carroll represented Vickers's adversary (Valenzuela), Cross agreed. Cross then told Carroll that during Cross's representation of Vickers, Cross had discussed

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

with Vickers the possibility of filing a lawsuit against Yamaha and that Vickers had decided against it. DP at 5; Exs. at 177, 245. Carroll took this information and in turn disclosed it publicly in Carroll's declaration in opposition to Vickers's motion to amend his answer. Clerk's Papers at 25; Exs. at 177.

The trial court nevertheless granted Vickers's motion to amend his answer on June 5, 2017. DP at 5. The amended answer asserted the affirmative defense that the accident was caused by mechanical failure of the ATV. *Id.*; Exs. at 203.

Ten days later, Carroll filed a motion to strike that affirmative defense and included a declaration from Cross to support this motion. Exs. at 206, 209; VRP at 24-25.

According to Cross, Carroll "just wanted to *clarify* who was representing who. And the fact we had decided not to file a products liability suit." Exs. at 244; VRP at 25 (emphasis added). Cross claimed that Carroll "needed to *clarify* what happened, and I *clarified* it at his request." VRP at 27 (emphasis added). Cross admitted that he never discussed with Vickers or Thompson whether he could disclose this information to Vickers's adversary. *Id.* at 35.

Cross's declaration stated in full:

> Geoffrey Cross, under penalty of perjury, deposes and states that I represented Mr. Vickers. That Mike Carroll provided recall documents. That Mr. Vickers did not wish to pursue a lawsuit against Yamaha over the recalled vehicle. This was discussed about the time

of his restitution hearing with the owner of the vehicle. The costs of a products liability suit and the legal complications made it something that we did not pursue.

Exs. at 209. Carroll's motion to strike the amended answer ultimately failed. VRP at 77.

Cross now acknowledges that providing the declaration was a mistake. *Id.* at 39. But he claims that nothing was disclosed that was not already in the public record. *Id*. Cross also claims that his understanding was complicated by the fact that the statute of limitations had expired on any claim that Vickers had had against Yamaha. DP at 7-8. Further, Cross now denies that he was helping Carroll and asserts that he did not believe he was hurting his former client in any way. VRP at 39. Notably, however, Cross admitted at other points during the disciplinary proceeding that the purpose of his declaration *was* to "help" Carroll. Exs. at 253.

> III.     The hearing officer ruled the violations were "negligent" and recommended a sanction of reprimand

The Office of Disciplinary Counsel (ODC) opened a grievance file on Cross on October 26, 2018. *Id.* at 212. After a hearing, the hearing officer determined that the ODC had carried its burden to prove that Cross violated RPC 1.9(c)(2) and RPC 1.6(a) by a "clear preponderance of the evidence." DP at 6. The hearing officer also concluded that Cross acted negligently in revealing client confidences and, hence, that the presumptive sanction was reprimand. ABA, STANDARDS FOR

IMPOSING LAWYER SANCTIONS std. 4.2, at 28-29 (1991 ed. & Supp. 1992); DP at 7, 11.

The hearing officer then found two substantial aggravating factors: Cross's two prior disciplinary offenses in the past 10 years and Cross's nearly 50 years of experience in the practice of law. DP at 9. The hearing officer also found three mitigating factors: (a) absence of a dishonest or selfish motive, (b) full and free disclosure to the disciplinary board or cooperative attitude toward proceedings, and (c) remoteness of one prior offense. DP at 10; ABA STANDARDS std. 9.32, at 50. After weighing mitigating and aggravating factors, the hearing officer recommended that Cross be reprimanded. DP at 11.

IV. <u>The Board ruled that the violations were "knowing" and imposed the sanction of a nine month suspension</u>

The ODC appealed the hearing officer's decision to the Board. ELC 11.2(b)(1); Answering Br. of ODC at 2. The Board unanimously adopted in part, reversed in part, and modified in part the hearing officer's decision. DP at 13.

The Board adopted the hearing officer's findings of fact. *Id*. at 14. But the Board reversed the hearing officer's determination that Cross acted "negligently." Instead, relying on the same *facts* that the hearing officer found, the Board concluded that Cross's actions constituted "knowing" conduct. *Id*. Next, the Board adopted both of the aggravating factors and two of the mitigating factors found by

8

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

the hearing officer. *Id*. But the Board struck the third mitigating factor: absence of a dishonest or selfish motive. *Id*. Based on these decisions, the Board modified the hearing officer's sanction from a reprimand to a nine month suspension. *Id*.

Cross brings this appeal under ELC 12.3(a), which provides a disciplined lawyer with the right to appeal a Board decision recommending suspension. Cross assigns error to the Board's determination that Cross acted knowingly, to its modification of the presumptive sanction from reprimand to suspension, to its decision to strike one of the mitigating factors, and to its modification of the final sanction from a reprimand to a nine month suspension. Br. of Appellant at 2.

ANALYSIS

I.    Standard of review

The Washington State Supreme Court bears the ultimate responsibility for lawyer discipline. *In re Disciplinary Proceeding Against Anschell*, 141 Wn.2d 593, 607, 9 P.3d 193 (2000). We will uphold a hearing officer's findings of fact if they are supported by a clear preponderance of the evidence. *Id.* at 606. Unchallenged findings of fact become verities on appeal. *Id.*; *In re Disciplinary Proceeding Against Johnson*, 118 Wn.2d 693, 701, 826 P.2d 186 (1992). Conclusions of law, however, are reviewed de novo. *In re Disciplinary Proceeding Against Eugster*, 166 Wn.2d 293, 312, 209 P.3d 435 (2009).

9

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

We give more weight to the Board's recommended sanctions than to those of the hearing officer. *Anschell*, 141 Wn.2d at 606. This weight is warranted because the Board is "the only body to hear the full range of disciplinary matters" and has a "unique experience and perspective in the administration of sanctions." *In re Disciplinary Proceeding Against Noble*, 100 Wn.2d 88, 94, 667 P.2d 608 (1983); *Anschell*, 141 Wn.2d at 607. In addition, when the Board is unanimous, we generally uphold its decision absent a "'clear reason[]'" for departure. *Johnson*, 118 Wn.2d at 703 (quoting *In re Disciplinary Proceeding Against Hankin*, 116 Wn.2d 293, 296, 804 P.2d 30 (1991)).

Sanction determinations are guided, but not conclusively determined, by the ABA STANDARDS. *Anschell*, 141 Wn.2d at 607-08. The ABA *Standards* provides a two-step process: (1) determine the presumptive sanction by considering (a) the ethical duty violated, (b) the lawyer's mental state, and (c) the extent of the actual or potential harm caused by the misconduct, and (2) weigh any aggravating or mitigating factors that may alter the presumptive sanction. *Id*. at 608. Then, if an attorney raises the issue, the appropriateness of the sanction is weighed against the *Noble* factors. *Noble*, 100 Wn.2d at 95-96; *In re Disciplinary Proceeding Against Schwimmer*, 153 Wn.2d 752, 758, 108 P.3d 761 (2005). Of the *Noble* factors,

10

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

Cross asserts only that the sanction is disproportionate to the misconduct. Br. of

Appellant at 22.

II. <u>The Board correctly determined that Cross acted with "knowledge" when he revealed information relating to the representation of former client Vickers to Vickers's adversary; the presumptive sanction is therefore suspension</u>

Standard 4.2 of the ABA STANDARDS governs the presumptive sanctions for

failure to preserve client confidences. The presumptive sanction differs depending

on whether the lawyer acted intentionally, knowingly, negligently with potential

injury, or negligently with little potential injury. ABA STANDARDS std. 4.2 at 28-

29. The crucial question in this case is whether Cross acted knowingly, thus

warranting a presumption of suspension (whether or not his violation caused

potential injury), or whether Cross acted negligently with potential injury, thus

warranting a presumption of reprimand.

*A. The Board correctly ruled that Cross violated the RPCs*

The hearing officer and the Board found that Cross violated two rules of

professional conduct, RPC 1.9(c)(2) and RPC 1.6(a). DP at 6, 14.

RPC 1.9(c)(2) states,

> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter . . . reveal information relating to the representation except as these Rules would permit or require with respect to a client.

11

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

RPC 1.6(a) states,

> A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

Cross does not dispute that he disclosed information relating to the representation of former client Vickers (though he does belatedly assert that his disclosure fell under an exception to the bar; we reject that defense as discussed in the note below).[2] Br. of Appellant at 2. Instead, his appeal focuses on the Board's application of the rules affecting sanctions to the facts of this case. *Id*.

B. *The Board correctly determined that Cross's actions were "knowing"*

Cross claims that the Board erred in changing the characterization of his mental state from "negligence" to "knowing." *Id.* We disagree.

---

[2] Cross included a belated defense that his disclosure fell under an exception to RPC 1.6. Br. of Appellant at 12. Subsection (b)(5) of this rule provides that a lawyer "may reveal information relating to the representation of a client" for the attorney "to respond to allegations in any proceeding concerning the lawyer's representation of the client." RPC 1.6. Cross claims that he was responding to Carroll's "allegation[]" that Cross *did* represent Vickers in a claim against Yamaha while Vickers claimed that Cross *did not* represent him in a claim against Yamaha. Br. of Appellant at 12. Cross concludes that he was responding to Carroll's "allegation" about who represented whom by clarifying that he (Cross) represented Vickers only in "the criminal matter," not the civil matter. *Id*. This confusion of facts does not constitute an "allegation" under the RPC 1.6(b)(5) exception. Cross's new argument about responding to Carroll's allegation also contradicts Cross's earlier assertions: Cross told the hearing officer that the purpose of his declaration and disclosure was to dispute a supposed attempt (never filed) by Thompson to disqualify Carroll from the case. Exs. at 244-45; VRP at 22-23, 27.

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

The ABA defines the relevant mental states as:

> "Knowledge" is the *conscious awareness* of the *nature or attendant circumstances of the conduct* but without the conscious objective or purpose to accomplish a particular result.

> "Negligence" is the *failure* of a lawyer to *heed a substantial risk* that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.

ABA STANDARDS at 17 (emphasis added).

As discussed above, we uphold a hearing officer's findings of fact if they are supported by a clear preponderance of the evidence. *Anschell*, 141 Wn.2d at 606. And neither Cross nor the Board have challenged the hearing officer's findings about what Cross disclosed, when or to whom he disclosed it, or whether he had permission from his former client to disclose it.

Instead, Cross challenges the Board's determination about the legal significance of those now undisputed facts. And we review legal conclusions—like the legal significance of undisputed facts—de novo. *Eugster*, 166 Wn.2d at 312.

Cross argues that he was not aware that the content of the declaration was a "client confidence" and therefore he did not have the requisite "knowledge" that he was violating an RPC. Br. of Appellant at 12. We assume that Cross's factual assertion is correct—the hearing officer's conclusion certainly seems to have been

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

based on his factual finding that Cross did not understand that he had violated the Rules.

We nevertheless reject Cross's argument for a variety of other legal reasons.

First, Cross misunderstands the scope of RPC 1.6(a)'s protection. RPC 1.6(a) does not prevent lawyers from disclosing only client "confidences"; it actually prevents lawyers from disclosing "information *relating to the representation* of a client." RPC 1.6 (emphasis added). This rule covers more than typical privileges or confidences. *Id.* cmts. 3, 21 ("'information relating to the representation' should be interpreted broadly"). "The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." *Id.* cmt. 3.

Second, a discussion with a client about the pros and cons of filing a civil lawsuit *is* privileged and confidential. *See, e.g.*, RCW 5.60.060 (2)(a) ("An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her *advice* given thereon in the course of professional employment." (emphasis added)); *Hoff v. Safeco Ins. Co. of Ill.*, 10 Wn. App. 2d 1, 15-16, 449 P.3d 667 (2019) (information and documents related to litigation strategy are not

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

discoverable under attorney-client privilege and attorney work product doctrine),

*review denied*, 195 Wn.2d 1007 (2020).

Third, and critically, we have explicitly held that a lawyer need not know

that his intentional actions violated the RPCs for those actions to be considered

"knowing." "[T]he definition of knowledge contains no such requirement and this

court has found knowledge where an attorney knew *or should have known* that a

conflict existed." *In re Disciplinary Proceeding Against Egger*, 152 Wn.2d 393,

416, 98 P.3d 477 (2004) ("consciousness that particular conduct violates the RPCs

is not a prerequisite for a finding of knowledge"); *In re Disciplinary Proceeding*

*Against Preszler*, 169 Wn.2d 1, 22, 232 P.3d 1118 (2010) (to find "knowledge"

attorney "simply needed to be consciously aware of the circumstances that made

his fee unreasonable," not consciously aware that his fee was in fact unreasonable

under the RPCs); *In re Disciplinary Proceeding Against Stansfield*, 164 Wn.2d

108, 123, 187 P.3d 254 (2008) ("We do not require proof of state of mind relating

to the consequences; it is sufficient if the facts support a conclusion that the lawyer

either knew or should have known that adverse consequences would occur."); *In re*

*Disciplinary Proceeding Against Holcomb*, 162 Wn.2d 563, 585, 173 P.3d 898

(2007) (attorney found to have acted with "knowledge" because he "should have

known that a conflict existed when he requested the loans from his client without

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

knowing of the trust and he should have inquired into the terms of the trust when he learned of it").

Cross knew that he was providing a declaration with "information relating to the representation" of his client to his client's adversary—a serious act that would cause any reasonable lawyer to at least pause and look up the rules on former client disclosures. Cross revealed his and his former client's assessment of the case. He revealed that assessment to help bolster Carroll's (and hence Valenzuela's) arguments in opposition to amendment of Vickers's answer; thus, the information that Cross now characterizes as merely "clarifying" was something that the parties to the civil suit hoped—or feared—could change the outcome. VRP at 27 (Cross claimed that Carroll "needed to clarify what happened, and I clarified it at his request.").

In sum, Cross knowingly provided a declaration to his former client's adversary discussing the course of his relationship with that former client. Thus, we uphold the Board's conclusion that Cross had "knowledge" of his actions.

### C. Cross caused potential harm

The mental state of knowledge triggers the presumptive sanction of suspension in this case. After we determine the mental state, we ask whether there was actual or potential harm to determine if that presumptive sanction should be

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

adjusted. *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 223, 125 P.3d 954 (2006) (if knowledge is found, but there was no potential for injury, the presumptive sanction can be lowered from suspension). A "potential injury" is harm "that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." ABA STANDARDS at 17. The extent of the injury caused by the attorney's misconduct is given "particularly great weight." *In re Disciplinary Proceeding Against Curran,* 115 Wn.2d 747, 772, 801 P.2d 962 (1990).

Cross caused potential injury. Thompson claimed that third party fault "was everything" in the defense's case because there were "bad injuries," Vickers had already pleaded guilty to reckless driving, there was a question about alcohol use, and there was an insurance policy limit. VRP at 77-78. Thompson was concerned that a judgment in excess of the policy limits could affect Vickers's personal assets, including his business. *Id*. Cross's disclosure to Carroll of information about Cross's representation of Vickers, for the purpose of helping Carroll in the lawsuit in which Carroll's client was adverse to Vickers, therefore posed reasonably foreseeable harm to Vickers.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

### D. The presumptive sanction is suspension

Because Cross knowingly disclosed information relating to the representation of a former client not otherwise lawfully permitted to be disclosed, and because this disclosure caused a potential injury to a client, the presumptive sanction is suspension. ABA STANDARDS std. 4.22, at 28-29. The length of a suspension is determined by weighing the aggravating and mitigating factors in the case.

### III.  Aggravating factors outweigh mitigating factors

The presumptive sanction should be upheld unless "the aggravating and mitigating factors are sufficiently compelling to justify a departure." *In re Disciplinary Proceeding Against Cohen*, 149 Wn.2d 323, 339, 67 P.3d 1086 (2003). Cross does not challenge the two aggravating factors that the Board adopted: (1) prior disciplinary offenses and (2) substantial experience in the practice of law. Br. of Appellant at 2. We adopt these aggravating factors and turn to the mitigating factors.

Cross does challenge the Board's decision to strike one of the mitigating factors. The hearing officer found three mitigating factors: (a) absence of a dishonest or selfish motive, (b) full and free disclosure to disciplinary board or cooperative attitude toward proceedings, and (c) remoteness of one prior offense.

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

DP at 10; ABA STANDARDS std. 9.32, at 50. The Board upheld the hearing officer's findings of cooperation and remoteness of one prior offense. But it struck the finding of the absence of a dishonest or selfish motive.

We give great weight to the Board's unanimous decision to uphold the mitigating factors of cooperation and remoteness of one prior offense, especially where (as here) we have not been presented with a clear reason to depart from that decision. *Anschell*, 141 Wn.2d at 606 (we give more weight to the Board's sanctions than to those of the hearing officer); *Johnson*, 118 Wn.2d at 703 (when the Board is unanimous, we generally uphold its decision absent a "'clear reason[]'" for departure (quoting *Hankin*, 116 Wn.2d at 296)). We therefore uphold these two mitigating factors.

We also uphold the Board's decision to strike the third mitigating factor, absence of a dishonest or selfish motive. A dishonest or selfish motive is typically found when "the lawyer intends to benefit financially or deceive the court." *Holcomb*, 162 Wn.2d at 587. Cross bears the burden to prove the absence of a dishonest or selfish motive as a mitigating factor, while the ODC has the burden to prove the existence of such a motive as an aggravating factor. *In re Disciplinary Proceeding Against Carpenter*, 160 Wn.2d 16, 30, 155 P.3d 937 (2007). There is no evidence that Cross intended to deceive the court or receive a direct or indirect

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

benefit from his actions. However, Cross admitted that the purpose of his declaration was to "aid" and "help" Carroll. Exs. 27 at 252-53. Thus, Cross's motivation in giving the declaration and providing information about his representation of Vickers was neither entirely selfish nor entirely free of personal motivation—Cross was seemingly helping out a friend. We therefore defer to the Board's decision to strike the mitigating factor of a lack of a dishonest or selfish motive. As a result, motive weighs neither for nor against Cross.

IV.  Cross's sanction is proportionate to his misconduct

When considering whether a sanction is proportionate to the misconduct, we typically defer to the Board's decision—particularly where, as here, the Board's decision is unanimous. *In re Disciplinary Proceeding Against Abele*, 184 Wn.2d 1, 28, 358 P.3d 371 (2015).

Proportionality is determined by comparing the recommended sanction to sanctions in cases with similarly situated attorneys and analogous levels of culpability. *In re Disciplinary Proceeding Against Christopher*, 153 Wn.2d 669, 686-87, 105 P.3d 976 (2005). The sanction needs to be "roughly proportionate." *In re Disciplinary Proceeding Against Gillingham*, 126 Wn.2d 454, 469, 896 P.2d 656 (1995). Additionally, the purpose of disciplinary proceedings is ""not punitive but to inquire into the fitness of the lawyer to continue in that capacity for

20

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

the protection of the public, the courts, and the legal profession.""'" *Eugster*, 166 Wn.2d at 315 (quoting ABA STANDARDS at 3 (quoting *Ballard v. State Bar of Cal.*, 35 Cal. 3d 274, 291, 673 P.2d 226, 197 Cal. Rptr. 556 (1983))). Cross bears the burden of bringing to the court's attention decisions that demonstrate the disproportionality of the sanctions imposed. *In re Disciplinary Proceeding Against Kagele*, 149 Wn.2d 793, 821, 72 P.3d 1067 (2003).

Cross brings five cases to this court's attention. Br. of Appellant at 22-25. The first is the stipulation of Michael Carroll (the same Carroll who was involved in this case). Stipulations, however, are not usually considered when determining the proportionality of attorney discipline. *In re Disciplinary Proceeding Against Boelter*, 139 Wn.2d 81, 103, 985 P.2d 328 (1999). We decline to use Carroll's stipulation for proportionality purposes because we do not have the stipulation, nor do we have the facts leading to such an agreed resolution, in the record.

Cross then points to *Schafer* and *Botimer,* cases in which the attorneys' disclosures of client confidences were more frequent and more extensive than Cross's disclosures. Br. of Appellant at 13-17, 24; *In re Disciplinary Proceeding Against Schafer*, 149 Wn.2d 148, 158, 169-73, 66 P.3d 1036 (2003); *In re Disciplinary Proceeding Against Botimer*, 166 Wn.2d 759, 765, 214 P.3d 133 (2009). But Botimer and Schafer had no prior disciplinary offenses, while Cross

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

does: this will be Cross's third time through the disciplinary process. Therefore, Cross's sanction is not necessarily disproportionate when compared to these cases.

Cross finally cites *Behrman* and *Dynan*. Br. of Appellant at 24-25; *In re Disciplinary Proceeding Against Behrman*, 165 Wn.2d 414, 418, 197 P.3d 1177 (2008); *In re Disciplinary Proceeding Against Dynan*, 152 Wn.2d 601, 621, 98 P.3d 444 (2004). The attorneys' conduct in those cases is certainly reprehensible, and seemingly worse than Cross's conduct. But the surrounding circumstances differ. Behrman and Dynan lacked the extensive prior discipline record that Cross has amassed.

We therefore uphold the Board's unanimous nine month suspension as "roughly proportionate" when compared to our prior suspension decisions. *Gillingham*, 126 Wn.2d at 469.

CONCLUSION

Cross acted knowingly when he disclosed information related to his representation of a former client without that client's informed consent, even if Cross did not know that the RPCs prohibited those disclosures. Based on our weighing of the aggravating and mitigating factors and a proportionality analysis, we uphold the unanimous Board's decision to impose a nine month suspension.

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Cross (Geoffrey Colburn) (Bar No. 3089)*
No. 201,993-5

Gordon McCloud, J.

WE CONCUR:

González, C.J.

Stephens, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.

23